UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
BILL'S BIRDS INC. and
    WILLIAM PELINSKY,

               Plaintiffs,

               -against-

TRADEMARKETING RESOURCES
INCORPORATED and CHRYSLER
GROUP LLC,

               Defendants.
-----------------------------------------------------X

MEMORANDUM AND ORDER

CV 11-3888

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    JUL 3 2013    ★ 

LONG ISLAND OFFICE

APPEARANCES:

    HAROLD G. FURLOW, ESQ.
    Attorney for Plaintiffs
    260 Montauk Highway, Suite 10
    Bay Shore, New York 11706

    KILPATRICK TOWNSEND & STOCKTON LLP
    BY:   LISA PEARSON, ESQ.
            RICHARD POTTER, ESQ.
    Attorneys for Defendants
    31 West 52nd Street, 14th Floor
    New York, New York 10019

WEXLER, District Judge:

       Plaintiffs Bill's Birds Inc. ("Bill's Birds") and William Pelinsky ("Pelinsky") (collectively the "Plaintiffs"), bring this action against Defendants seeking a declaratory judgment and injunctive relief, and claiming unfair trade practices and antitrust violations under federal and New York state law, in connection with automotive decorative trim pieces Plaintiffs sell or intend to sell. Defendant Chrysler Group LLC ("Chrysler") and Trademark Resources

1

Incorporated ("TRI") (collectively the "Defendants") move to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

## BACKGROUND

The facts outlined here are from Plaintiffs' 39-page amended verified complaint[1], and the 16-page affidavit of William Pelinsky, the president of Bill's Birds, and the nine (9) exhibits attached thereto. Bill's Birds is a New York corporation located in Dix Hills, New York and is in the business of making and selling aftermarket replacement automotive decorative trim pieces. According to Mr. Pelinsky, his business began in the early 1980s when he could not get a replacement decorative trim piece from the original car manufacturer after his car was damaged. He made his own, and over time, this hobby turned into a business. According to Pelinsky, the original equipment manufacturers ("OEMs") were not interested in making these specialized parts that demanded relatively low quantities, and so independent sources, such as Pelinsky, stepped up to fill the void for these aftermarket replacement automobile decorative parts, and it became profitable.

On November 20, 2009, Bill's Birds circulated a 7-page flyer, attached to Plaintiffs' amended complaint as Exhibit C, "announcing new product." Each page contains Bill's Birds' location and contact information and a photo, a description and a price for each item, totaling 7 items, for things such as a trunk lock cover, a radio plate, light surrounds, and three emblems, for Demon, Swinger and Plymouth.

In November 25, 2009, Mr. Rachuy, a representative of defendant TRI, Chrysler's

---

[1]Following Defendants' request to move against Plaintiffs' complaint, Plaintiffs were granted leave to file an amended complaint.

licensing agent, called Bill's Birds and spoke with Pelinsky, saying he had a copy of the flyer and demanding that all sales of the items contained therein cease, stating that Chrysler retained the exclusive right to manufacture those trim items, saying "everybody knows that Chrylser owns everything." Rachuy informed Pelinsky that if Bill's Birds manufactured or sold any of those items, Chrysler would take criminal and civil action. Pelinsky, on behalf of Bill's Birds, agreed to stop disseminating the flyer or selling the items, and Rachuy suggested that Bill's Birds apply for a license to use the Chrysler trademark and manufacture trademarked items.

On February 11, 2010, Bill's Birds submitted an application to Chrysler for a license "as a party with at least some interest in using Chrysler's trademarks" to use some of its products. The application is attached to the amended complaint as Exhibit E. Though the application does not list any specific trademarks, it lists Fury, Monaco, Barracuda, Polara, Belvedere, Savoy and Demon as "desired products," and projects sales of $5,000 per item for the first year. Though requested on the application, neither a detailed marketing plan nor a sample of the products were provided with the application.

The response to the application, an email dated April 6, 2010, is attached at Exhibit F. In that email, Mr Rachuy advised counsel for Bill's Birds that it would not be allowed to produce, market or sell certain Plymouth, Demon and Swinger emblems, "or any other emblems containing Chrysler intellectual property such as model names, division brands, etc." The email does not refer to the other items listed in the application.[2]

In the emails that followed to clarify Chrysler's rejection of the application and the legal

---

[2]Plaintiffs argue that the other items are not enumerated in the application response because those names – Fury, Barracuda, Polara, Belvedere and Savoy - have been discontinued as models and abandoned as trademarks, and thus are in the public domain.

3

basis for the decision, Chrysler's counsel reiterated Chrysler's exclusive rights to the Plymouth, Demon and Swinger marks, and "Chrysler's other heritage models names," through prior use, customer recognition and licensing of the marks. In the letter, counsel also asserts that Bill's Birds' continued use of Chrysler's marks is a violation of Section 43 of the Lanham Act, for which Bill's Birds would be liable. See Exhibits G and H.

This lawsuit followed. Plaintiffs argue that Chrysler's sweeping claim that it has exclusive rights to "any marks associated with Chrysler," without distinguishing between the various brands, or specifically responding to the brands listed in Plaintiffs' application, is improper and warrants a declaratory judgment from the court. In addition to the exhibits outlined above, Plaintiffs also attached to their amended complaint a list of "Names of Automobile Models and Divisions Abandoned by Defendant Chrysler" (Ex. A), and a list "Automotive Decorative Trim Piece Parts that Do Not Include Emblems." (Ex. B).

Plaintiffs allege that Defendant Chrysler has a monopoly in the aftermarket replacement decorative trim parts market throughout the United States, and that the aftermarket replacement parts are functionally interchangeable with the parts made originally by Chrysler for new automobiles.

Plaintiffs' seek: (1) a declaratory judgment that the items listed in Exs. A, B and C are not the exclusive property of Chrysler; (2) a preliminary injunction and/or permanent injunction restraining Defendants from seizing Plaintiffs' property or threatening Plaintiffs with civil or criminal liability; (3) restraining Defendants from threatening Plaintiffs in a manner that restrains trade in violation of the Sherman Act, 15 U.S.C. §§ 1-2; (4) damages resulting from Defendants' alleged violation of the Lanham Act, 15 U.S.C. Chapter 22; (5) damages resulting from

4

Defendants' alleged conspiracy to restrain trade in violation of 15 U.S.C. §§ 1 and 2; and (6) damages resulting from Defendants' alleged violations of New York state law forbidding restraint of trade, deceptive acts and practices, and unfair competition. Defendants move to dismiss the complaint in its entirety under Rule 12(b)(1) and 12 (b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

### I. Legal Principles

#### A. Standards on Motions to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(1), the Court must construe the complaint liberally, and accept all factual allegations as true, and dismiss when there is no "statutory or constitutional power to adjudicate" the dispute. Ford v. D.C. 37 Union Local, 579 F.3d 187, 188 (2d. Cir. 2009) (citations omitted). Similarly, when reviewing under Rule 12 (b)(6), the court must review whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Absolute Activist Value Master Fund Limited v. Ficeto, 677 F.3d 60, (2d Cir. 2012), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 556 U.S. at 678-679, 129 S.Ct. at 1950. "A complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id., quoting Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 557 (2007).

### II. Disposition of the Present Motion

Since Defendants move to dismiss all the claims in Plaintiffs' amended complaint, the court will address each claim individually.

5

1. <u>Declaratory Judgment</u>

Plaintiffs seek a declaratory judgment that the decorative trim parts described and/or listed in Exhibits A, B & C attached to the amended complaint are in the public domain and therefore not subject to protection. Defendants argue the court lacks subject matter jurisdiction under the Declaratory Judgment Act, and the claim should be dismissed under Rule 12(b)(1).

28 U.S.C. § 2201, the Declaratory Judgment Act (the "Act"), states that:

> (a) in a case of actual controversy within its jurisdiction....any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

In <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118 (2007), the Supreme Court reviewed whether an actual controversy existed in a patent case where one party was paying royalties to another and thus keeping a lawsuit at bay. The Court reiterated that to be an "actual controversy" as required by the Act, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; ... be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" <u>Id.</u>, at 125, quoting <u>Aetna Life Ins. Co. V. Haworth</u>, 300 U.S. 227, 240-241 (1937). The Court stated that each case turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy ... of sufficient immediacy and reality" to warrant a declaration of interests. <u>MedImmune</u>, at 127, quoting <u>Maryland Casualty Co. V. Pactific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941). To require that a plaintiff "destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its

actively contested legal rights finds no support in Article III." Id., at 134.

In Nike, Inc. v. Already, LLC, 663 F.3d 89 (2d Cir. 2011), certiorari granted, 133 S.Ct. 24 (June 25, 2012), the Second Circuit applied the MedImmune "totality of the circumstances" test to determine whether the adversity between the parties was "real and substantial." Nike, at 95-96, citations omitted.[3] The Court confirmed that while MedImmune rejected that a reasonable apprehension of liability was required to create a justiciable controversy, it was still necessary that the potential infringer had engaged in a course of conduct that put it in an adversarial posture with the defendant, through an intent and ability to potentially violate the marks. Id., at 96, n. 1 (2d Cir. 2011), citing Bruce Winston Gem Crop. v. Harry Winston, Inc., 2010 WL 3629592 (S.D.N.Y. 2010). See also Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90 (2d Cir.1963) (there must be a definite intent to take immediate action, as reflected in the complaint, versus a mere vague and unspecific desire to use a mark); Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 649 (2d Cir.1988) (no conflicting legal issue where there is no evidence indicating intention to expand or continue business); Banff, Ltd. v. Federated Dept. Stores, Inc., 841 F.2d 486, 493 (2d Cir. 1988) (party's intention and ability to sell goods potentially violative of the mark created a justiciable controversy); Golden Gulf Corp. v. Jordache Enterprises, Inc., 896 F.Supp. 337, 340 (S.D.N.Y. 1995) (no justiciable controversy in light of partes' agreement to not sell in the United States).

---

[3] In that case, the parties had executed a covenant not to sue and the issue was whether that eliminated the controversy necessary for a declaratory judgment action. The Court found that in light of the broad nature of the covenant not to sue, covering both past and future sales of both existing products and colorable imitations, and there being no indication of defendant's intention to market any shoe that might involve the covenant, there was no justiciable controversy. Id., at 97.

7

In this case, Plaintiffs' complaint reflects that, at least as to the items outlined in Exhibit C, which is the flyer that was disseminated and caught the attention of TRI, there is an "actual controversy" between the parties. Plaintiffs clearly had the intention and ability to sell and market those particular items, as reflected by the flyers themselves, which contain a picture of the item and provide a price and contact information to make a purchase. Indeed, Pilensky's affidavit reflects that Bill's Birds had been marketing them for some time, and that he stopped all sales once he received the call from TRI. Thus, the court finds that an actual controversy exists as to these items, and defendants' motion to dismiss for lack of subject matter jurisdiction regarding Exhibit C is denied.

The analysis of those items or names listed on Exhibits A and B lead to a different result. Neither the amended complaint, nor attachments thereto, provide any indication of the immediacy or ability to manufacture or sell particular items reflected in those exhibits. Exhibit A is a list of automobile models and divisions allegedly abandoned by Chrysler, and Exhibit B is a list of different types of automotive decorative trim pieces -- for example, handles, knobs, trim -- that Plaintiffs assert do not include emblems or distinct elements of trade. While Mr. Pelinsky says he has been "making decorative parts for years," no detail is provided regarding specific intention or ability to make or sell the specific examples of items related to Exhibits A and B. While some of the names included on Exhibit A are included in the list contained in the license application to Chrysler, no specific business plan or potential sales information was provided as part of the application or to this court.

The amended complaint merely asserts that Chrysler abandoned those brand names, and that non-emblem, non-distinct decorative parts are in the public domain, and that Chrysler's

inability or refusal to specify which items are available for manufacture by independent sources such as Bill's Birds warrants clarification from the court. Yet, more is required to get a declaratory judgment. The courts finds that Plaintiffs' intention to market and sell items connected to Exhibit A and B is very attenuated, and that the amended complaint reflects a mere desire to one day do so, as opposed to a definite intent or ability to take immediate action, and thus an actual controversy is not yet ripe. Thus, the court does not have subject matter jurisdiction, and Defendants' motion to dismiss Plaintiffs' claim for a declaratory judgment for those brand or items listed in Exhibits A and B is granted.

2. Preliminary and/or Permanent Injunction

Plaintiffs' second count seeks a "preliminary and/or permanent injunction" to restrain Defendants from charging or taking action against Plaintiffs' for alleged trademark infringement. Yet, as Defendants argue, an injunction is a remedy; it is not a separate cause of action. Reuben H. Donnelly Corp. v. Mark I Marketing Corp., 893 F.Supp. 285, 293 (S.D.N.Y. 1995).

Yet, even if Plaintiffs' complaint could be construed to seek the remedy, as opposed to alleging a cause of action for, injunctive relief, the claim fails. To obtain a permanent injunction, a plaintiff must satisfy four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). The Second Circuit has held "that eBay applies with equal force (a) to preliminary injunctions (b) that are issued for alleged

copyright infringement." Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010).[4]

Plaintiffs' amended complaint fails to allege how they satisfy these factors. While the thrust of Plaintiffs' complaint is that they have been injured by Chrysler preventing them from selling their parts, there are no allegations showing how this injury is irreparable, that a remedy at law would not be adequate, or that the balance of hardship tips in their favor. Plaintiffs' fail to provide any guidance in opposition to Defendants' motion on these points. They argue generally that the public is disserved by Chrysler allegedly illegally preventing others from entering the automotive decorative trim pieces market, yet this is insufficient for injunctive relief. As a result, Defendants' motion to dismiss count 2 is granted.

3. Federal Antitrust Claims

Counts 3 and 5 of Plaintiffs' amended complaint claim federal antitrust violations by Defendants. Count 3 alleges the Defendants have contracted or conspired to restrain Plaintiffs' trade and seeks to restrain Defendants from interfering with Plaintiffs' business, and count 5 claims Defendants have contracted or conspired to monopolize the aftermarket decorative trim piece part market, both in violation of the Sherman Act, 15 U.S.C. §§ 1-2.

a. § 1 of the Sherman Act

15 U.S.C. §§ 1 deems illegal "[e]very contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States..." To make a claim under this section of the Sherman Act, a plaintiff must "produce evidence sufficient to

---

[4] In Salinger, the Court stated that there was "no reason" that the same standard would not apply with equal force to an injunction in any case. Id., at 78, n.7 See U.S. Polo Ass'n, Inc. V. PRL USA Holdings, Inc., 800 F.Supp.2d 515, 539 (S.D.N.Y. 2011) (Salinger suggests that the eBay analysis would apply to trademark cases as well).

show: (1) a combination or some form of concerted action between at least two distinct economic entities; and (2) such combination or conduct constituted an unreasonable restraint of trade either *per se* or under the rule of reason." Tops Market, Inc. v. Quality Markets, Inc., 142 F.3d 90, 95-96 (2d Cir. 1998), citing Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc., 996 F.2d 537, 542 (2d Cir. 1993), cert. denied, 510 U.S. 947, 114 S.Ct. 388 (1993) (unilateral conduct by one single person or enterprise falls outside the purview of § 1)(citations omitted).

The essence of a § 1 violation is the concerted action, or conspiracy between "separate entities." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769, 104 S.Ct. 2731, 2740-41 (1984). Employees or officers of the same firm cannot combine or conspire to violate § 1, since acting to "implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so *agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.*" Id.,(emphasis added) (a parent and its wholly owned subsidiary are a single economic entity and cannot conspire to violate § 1). See also Capital Imaging Associates, 996 F.2d 537, 542 (2d Cir. 1993) (doctors with their own private practices who joined an independent practice association were separate economic entities capable of conspiring to violate § 1).

Here, Plaintiffs' amended complaint alleges that TRI is a licensing agent of Chrysler, and that neither has an ownership interest in the other. The question is whether they are sufficiently distinct economic entities able to conspire, as proscribed by § 1. The Second Circuit addressed this issue in the context of a principal/agent relationship in Fuchs Sugars & Syrups, Inc. V.

Amstar Corp., 602 F.2d 1025 (2d Cir. 1979), cert. denied, 444 U.S. 91 (1979). There, the Court reviewed whether sugar brokers were capable of conspiring with a sugar refiner, and stated that whether "two actors constitute distinct economic entities for purposes of the Sherman Act is determined by the economic realities of their relationship." Id., at 1031, fn. 5 (citations omitted). The relevant factors in the context of a principal/agent relationship are: whether the agent performs a function on behalf of his principal other than securing an offer from a buyer, the degree to which the agent can exercise discretion, and whether use of the agent is a separate step in the distribution process. Id. Indeed, the Court found that the broker in that case acted solely as a conduit through which the refiner would negotiate its distribution of sugar, and found there was no economic independence. Id. See also Belfiore v. New York Times Co., 826 F.2d 177, 182 (2d Cir. 1987) (in addition to the Fuchs factors, when considering capacity to conspire, courts should also consider the number and nature of the agents' functions, whether the agent acts in its own interests, and whether the alleged conspirators are, in reality, under the control of one entity).

Assuming the facts alleged in Plaintiffs' amended complaint to be true, review of the factors outlined in Fuchs and Belfiore dictates that TRI is not an independent, separate economic entity from Chrysler. All evidence shows that TRI acted consistently to further the interests of Chrylser, and not its own. There is no allegation or indication that TRI had any decision-making capacity, and was merely the conduit of communication between Chrylser and its licensees or potential licensees. There is no allegation that TRI had any input in whether and under what terms a license would be granted, and indeed it appears that Chrysler alone was in full control of the licensing arrangements. As a result, the court finds that the economic realities of this principal/agent relationship indicate that TRI was not a separate economic entity from Chrysler,

and therefore there was no capacity to conspire to violate § 1. Therefore, the claims based on alleged violations of 15 U.S.C § 1 are dismissed.[5]

  b. § 2 of the Sherman Act

15 U.S.C § 2 prohibits monopolization, attempts to monopolize and conspiracy to monopolize. Critical to the determination of whether there is a monopoly or attempt to monopolize is whether there is monopoly power. Monopoly power is the "'power to control prices and exclude competition.'" PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 107 (2d Cir. 2002), quoting United States v. E.I. duPont de Nemours & Co., 351 U.S. 377, 391 (1956). This is also referred to as having a "high degree of 'market power.'" Heerwagen v. Clear Channel Communications, 435 F.3d 219, 226 (2d Cir. 2006), quoting Tops Market, Inc. v. Quality Mkts., Inc., 142 F.3d 90, 97 (2d Cir. 1998). Determination of the correct relevant market is critical to determine whether there is market power, and thus an ability to effect competition or control prices. City of New York v. Group Health Inc., 649 F.3d 151, 155 (2d Cir. 2011); Heerwagen, 435 F.3d at 226-227, citing PepsiCo., 315 F.3d at 108; id., at 229 ("a plaintiff claiming monopolization is obligated to establish the relevant market because the power to control prices or exclude competition only makes sense with reference to a particular market.")

When alleging the relevant market in its complaint, a plaintiff must follow the rules of interchangeability and cross-elasticity of demand, and include in its market all interchangeable substitutes. See City of New York v. Group Health Inc., 649 F.3d at 155-156; Chapman v. New

---

  [5]Plaintiffs argue in their opposition papers that ¶ 65 of the amended complaint alleges that Chrysler used its licensees, and thus conspired with these licensees, to restrain Plaintiffs' trade. Merely asserting these conclusory allegations of conspiracy, without more, is insufficient to survive a motion to dismiss. Bell Altantic Corp. v. Twombly, 550 U.S. 544, 556-557, 127 S.Ct. 1955, 1966 (2007).

York State Division for Youth, 546 F.3d 230, 238 (2d Cir. 2008), cert. denied, 130 S.Ct. 552 (2009). Interchangeability and cross-elasticity of demand are driven by whether the consumer would use the products interchangeably. Chapman, 546 F.3d at 238 (citations omitted); see also In re Payment Card Interchange Fee and Merchant Discount Litigation, 562 F.Supp.2d 392, 399 (E.D.N.Y. 2008), quoting PepsiCo, Inc., 315 F.3d at 105 ("[c]ompanies should be treated as competitors in a market if - considering consumer price, use, and qualities - consumers treat their products as acceptable substitutes for the purposes for which the products were intended"). Cross-elasticity also includes the geographic scope of the market, meaning where consumer can turn, as a practical matter, for a substitute. Heerwagen, 435 F.3d at 227; All Star Carts and Vehicles, Inc. V. BFI Canada Income Fund, et al., 596 F.Supp.2d 630, 641 (E.D.N.Y. 2009).

Plaintiffs' amended complaint alleges that the relevant market for purposes of proving its monopoly claim is the aftermarket replacement decorative trim parts market for cars originally manufactured by Chrysler throughout the United States. See Amended Complaint, ¶¶ 56-59 (the "Amend. Comp."). Yet, beyond stating that "the aftermarket replacement parts are functionally interchangeable with the parts made originally for the new automobiles," (Amend. Comp., ¶ 58), Plaintiffs fail to include interchangeability or cross-elasticity of demand in its definition of the relevant market. While Plaintiffs argue that its products are functional substitutes for Chryslers' original trim pieces, Plaintiffs fail to allege how these products are interchangeable from the consumer's perspective. Indeed, Plaintiff William Pelinsky avers that he originally entered this business because he could not obtain replacement parts from Chrysler. Plaintiffs' products are substitutes for Chrysler's products once the Chrysler piece needs to be replaced; there is no allegations that these products compete in the same market. Nor does the amended complaint

14

provide any evidence that Chrysler maintains a monopoly in that market. Since Plaintiffs have failed to allege a plausible relevant market or the existence of any monopoly power, Defendants' motion to dismiss the antitrust claims under § 2 of the Sherman Act is granted.

4. <u>Lanham Act Claims</u>

Count 4 of Plaintiffs' complaint alleges that Defendants violated § 43(a) of the Lanham Act, 15 U.S.C § 1125 by deceiving Plaintiffs regarding the trademark rights of the goods described in Exhibit C (the sales flyers) and Exhibit E (the trademark application). Plaintiffs allege that these decorative trim pieces, both emblem or non-emblem, were either not registered trademarks, or if they were, there has not been continued use of the trademarks and/or they have been abandoned. Plaintiffs claim that Defendants, by "deceptively asserting ownership and rights of approval" over these trim parts, violated 15 U.S.C. § 1125 (a)(1)(A).

Section 43(a) of the Lanham Act, provides a civil remedy for anyone who claims to be damaged by a person who "uses in commerce any word, term, or name...or false and misleading description...or misrepresentation of fact, which...(A) is likely to cause confusion, or cause mistake, or to deceive as to affiliation, connection or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services of commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

The Supreme Court has stated that "Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's good will. It forbids, for example, the Coca-Cola Company's passing off it product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product. The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." <u>Dastar Corp. v. Twentieth Century Fox Film</u>

15

Corp., 539 U.S. 23, 32 (2003). See also Associated Press v. All Headline News Corp., 608 F.Supp.2d 454, 463 (S.D.N.Y. 2009) (Lanham Act prohibits actions that deceive consumers); Licata & Co., v. Goldberg, 812 F.Supp. 403, 408 (S.D.N.Y. 1993) (the Lanham Act's anti-deception provision, 15 U.S.C. § 1125(a), is designed to bar misleading commercial advertising, and would be "trivialized" if applied to statements between a salesperson and individual customer).

Plaintiffs' alleged violations of the Lanham Act do not involve anything of consequence to consumers. The allegedly deceptive communications are those from TRI and /or Chrysler that assert trademarks rights that Plaintiffs argue do not exist. These purported deceptions and misrepresentations did not deceive or confuse consumers, and do not constitute a Lanham Act violation. See Dastar, 539 U.S. at 33-34 (the Lanham Act is not intended to "overextend" into areas normally occupied by patent or copyright law). Therefore, Defendants' motion to dismiss Count 4 is granted.

### 5. State Law Claims

Count 6 asserts that Defendants have violated the New York State General Business Laws §§ 340 and 349 for restraint of trade and unfair competition. The Second Circuit has stated that the Donnelly Act, N.Y. Gen. Business Law § 340, was modeled on the Sherman Act and the same standards apply. Venture Technology, Inc. v. National Fuel Gas Co., 685 F.2d 41, 42 n. 1 (2d Cir. 1982). Therefore, the reasoning outlined above dismissing Plaintiffs' Sherman Act claims applies to the Donnelly Act claim as well, which is also hereby dismissed. Plaintiffs' state law claim under N.Y. General Business Law § 349 requires that the challenged act or misrepresentation be consumer-oriented. Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (to state a claim

16

under §349, the defendants' deceptive acts must be directed at consumers); Vitolo v. Mentor H/S, Inc., 213 Fed.Appx. 16 (2d Cir. 2007) (the misrepresentation, if it did occur, had no impact on consumers at large). Plaintiffs have fails to make any such allegation, and therefore, this claim is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' claim for a declaratory judgment regarding the items listed on Exhibit C is denied. Counsel are referred to the Magistrate Judge to proceed with discovery on this limited declaratory judgment claim. Defendants' motion to dismiss Plaintiffs' claim for a declaratory judgment regarding the items listed on Exhibits A and B attached to Plaintiffs' amended complaint, is granted. Defendants' motion to dismiss Counts 2 through 6 of Plaintiffs' amended complaint is hereby granted.

SO ORDERED

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 31, 2013